UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Docket No.: 3:00CR227 (SRU) |
| | : | |
| YAMARR SHIPMAN | : | January 14, 2005 |

**GOVERNMENT'S MOTION FOR DOWNWARD DEPARTURE
PURSUANT TO U.S.S.G. § 5K1.1,
AND TITLE 18, U.S.C. § 3553(e)**

The United States of America, by and through the undersigned Assistant United States Attorney, moves the Court to depart downward from the defendant's Guidelines sentencing range pursuant to U.S.S.G. § 5K1.1, and from the statutory minimum term of imprisonment pursuant to 18 U.S.C. § 3553(e). The reasons for the government's motion are set forth in the accompanying memorandum of law.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


ALEX HERNANDEZ
ASSISTANT UNITED STATES ATTORNEY
915 LAFAYETTE BLVD.
BRIDGEPORT, CT 06604
(203) 696-3000
FEDERAL BAR No. CT08345

CERTIFICATE OF SERVICE

This is to certify that a copy of the within and foregoing has been mailed, postage prepaid, this January 14, 2005, to:

Francis O'Reilly, Esq.
O'Reilly and Shaw
2 Sherman Court
Fairfield, CT 06430

Raymond Lopez
Senior U.S. Probation Officer
United States Probation Office
915 Lafayette Boulevard
Bridgeport, CT 06604

_____
Alex Hernandez

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Docket No.: 3:00CR227 (SRU) |
| | : | |
| YAMARR SHIPMAN | : | January 14, 2005 |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF A MOTION
FOR DOWNWARD DEPARTURE PURSUANT TO
U.S.S.G. § 5K1.1, AND 18 U.S.C. § 3553(e)**

**I.   INTRODUCTION**

U.S.S.G. Section 5K1.1 provides that upon the filing of a motion by the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, a sentencing court may depart form the applicable Guidelines sentencing range.  Similarly, upon a motion by the government, Title 18, United States Code, Section 3553(e) provides that a sentencing court may sentence a person who has provided substantial assistance without regard to any prescribed statutory mandatory sentences.  The United States respectfully submits that the defendant has provided substantial assistance in the investigation and prosecution of others who have committed criminal offenses, and hereby moves pursuant to Guidelines Section 5K1.1 and Section 3553(e) of Title 18 for a downward departure.

The defendant is scheduled to be sentenced on Thursday, January 27, 2005, at 2:00 p.m.

**II.   FACTS OF THE OFFENSE**

The District Court has presided over a number of trials and the sentencing of numerous co-defendants.  Thus, this memorandum does not set forth all of the facts developed during the

course of the investigation and prosecution of this case. The following offense conduct pertains primarily to the defendant's personal involvement in the offense of conviction and is drawn from the PSR prepared by Senior United States Probation Officer Raymond Lopez.

     Defendant Yamarr Shipman was a street-level drug trafficker employed by the Frank Estrada drug trafficking organization to distribute narcotics within the P.T. Barnum Housing Project. He first became involved in illegal narcotics activities in January 1997, when he began "stashing" heroin for Jermaine Jenkins. Every two weeks, Jenkins would give Shipman a book bag that contained approximately 30 to 50 bricks of heroin. (Based upon an average quantity of heroin found in bags of heroin seized and purchased during the investigation, it has been estimated that a brick of heroin (100 bags) contains approximately 5 grams of heroin.) Additionally, a few months after stashing heroin, Shipman also began selling for Jenkins and sold one to two bricks a day approximately three days a week, and was paid $200 per brick sold. Shipman and the rest of Jenkins' crew usually sold in front of Building 14. Shipman, on occasion, would drive Jenkins' vehicle and often observed Jenkins' black handgun in the center console. Shipman was paid $200 per stash bag, and worked for Jenkins storing and selling heroin for approximately six months. Conservatively, estimating that he stashed 30 bricks of heroin every two weeks for six months, for -a total of 12 weeks, Shipman stored approximately 1.8 kilograms of heroin for Jenkins during this time. Additionally, for approximately two months, Shipman sold on average, 1.5 bricks per day, three days a week, for a total of 24 days, which equals approximately 180 grams of heroin. As such, through his involvement with Jenkins, Shipman is responsible for approximately 2 kilograms of heroin.

In mid-1997, Shipman met Isaias Soler, and learned that Soler was paying his sellers $250 per brick sold. Subsequently, he asked Jenkins for a raise and after Jenkins declined, he began selling for Soler in front of Building 11 in the P.T. Barnum Housing Project. At the time, Soler had numerous other sellers including Pablito Cotto, Arnold Rodriguez, Robert Bowens, Viviana Jimenez, Glenda Jimenez and others. Shipman sold heroin for Soler for approximately four months, usually selling one brick a day. He was aware that Soler kept a gun in his vehicle parked adjacent to Building 11, and Shipman observed the gun on at least one occasion. Considering a brick a day, for 100 days, it is conservatively estimated that Shipman sold approximately 500 grams of heroin for Soler during this time.

While working for Soler, Shipman noted that Eddie Lawhorn had become a lieutenant in the Estrada organization. In November 1997, Lawhorn approached Shipman and offered to pay him $300 per brick to sell heroin. Initially, Lawhorn was giving Shipman one brick a day, but as Shipman became more trusted, Lawhorn would give him three to five bricks a day to provide to other sellers, and instructed Shipman to serve as a lookout for police presence. In November 1998, Lawhorn provided Shipman with a .44 caliber revolver and asked him to hold it for him. Shipman placed the gun in his home, but after his mother found it, he gave the gun to Michael Whittingham and asked Whittingham to hold it. This is the same gun that Shipman possessed when he was arrested by Bridgeport police on November 28, 1998 and charged with Threatening and Possession of a Pistol Without a Permit. After reportedly being threatened by his ex-girlfriend's boyfriend, he asked Whittingham for a ride to her residence to pick up his personal belongings, and asked Whittingham to bring the gun. This resulted in Shipman's arrest and he remained in state custody for a period of time following this arrest. As such, Shipman worked for

Lawhorn from sometime in November 1997 until November 25, 1998 when he was arrested. Averaging out that he was involved with three bricks a day, twelve days a month, for a total of 144 days, it is conservatively estimated that he was personally responsible for the distribution of approximately 2.1 kilograms of heroin during this time.

Following his release from the Connecticut Department of Corrections ("DOC") on July 15, 1999, Shipman was released from custody and placed on house arrest, and was not involved in the sale of narcotics. However, after he was released from house arrest in January 2000, he resumed his involvement with Lawhorn, once again acting as a lookout in the sale of approximately four bricks of heroin per day, receiving $200 a day for his efforts. From January until his arrest on August 3, 2000, considering that he worked four days a week, distributing approximately four bricks of heroin per day (20 grams), multiplied by 112 days, it is conservatively estimated that Shipman is personally responsible for the distribution of 2.2 kilograms of heroin during this time.

On January 20, 2000, a cooperating witness (CW), working with the Federal Gang Task Force, purchased a brick of heroin from Yamarr Shipman in the P.T. Barnum Housing Project, utilizing $900 which had been provided by FBI agents. Thereafter, on February 18, 2000, the CW went to Club Innovations in Bridgeport, met with Eddie Lawhorn and complained about being "shorted" on the January, 20 heroin purchase from Shipman. Lawhorn told the CW that he would take care of it, and encouraged him to come to P.T. Barnum to see him whenever he needed to purchase more heroin. Thereafter, Task Force members provided the CW with $1,000 and instructed him to go to P.T. Barnum to purchase a bundle of heroin from Lawhorn. The CW was equipped with a recorder and transmitter and agents established surveillance within P.T.

4

Barnum. The CW observed Lawhorn and Shipman sitting in a Dodge Intrepid with two females, in front of Buildings 4 and 10. The CW approached Lawhorn, who was sitting in the driver's seat, and asked if they could do business. Lawhorn motioned to Shipman to exit the vehicle and take care of the source. Shipman exited the vehicle and Lawhorn drove away. The CW complained to Shipman about the last transaction, in which he had been shorted a number of packets. Shipman assured the CW that it would not happen again, after which Shipman and the CW entered Building 5, Apartment 211, where the CW observed several bricks of heroin and money in the kitchen. Shipman sold the CW a brick of heroin for $900, which was later determined to contain a net weight of 4.2 grams of heroin.

On August 3, 2000, at approximately 8:30 a.m., Bridgeport police officers were conducting surveillance at Buildings 11 and 12 in the P.T. Barnum Housing Project. They observed several drug transactions occurring with Yamarr Shipman acting as a lookout. Shipman and others were arrested for Conspiracy to Sell Narcotics, Sale of Narcotics and Sale of Narcotics Within 1,500 feet of a Housing Project. Shipman was released on state bond but was later arrested by federal authorities on December 7, 2000.

In total, during the entire time of his involvement with the Estrada organization in the sale and storage of heroin, it is conservatively estimated that Yamarr Shipman is personally responsible for the distribution of approximately 7 kilograms of heroin.

### III.    GUIDELINES CALCULATION

Senior United States Probation Officer Raymond Lopez, who has supervised and/or prepared all of the PSRs in connection with the Estrada prosecution, has calculated the defendant's Guidelines Imprisonment range to be 168 to 210 months based upon the following.

| | |
|---|---|
| Base Offense Level<br>U.S.S.G. § 2D1.1(c)(3) | 34 |
| Firearms in Connection with Offense<br>U.S.S.G. §§ 2D1.1(b)(1) & 1B1.3 | +2 |
| Role in the Offense | +0 |
| <u>Acceptance of Responsibility</u> | <u>-3</u> |
| Total Adjusted Offense Level | 33 |

The defendant has a total of 5 criminal history points resulting in Criminal History Category III. The intersection of offense level 33 and Criminal History Category III yields an imprisonment range of 168 to 210 months. The offense also carries a statutory minimum 10 year term of imprisonment.

IV.     **NATURE AND EVALUATION OF DEFENDANT'S COOPERATION**

Guidelines Section 5K1.1, and 18 U.S.C. § 3553 provide that the Court, when determining the appropriate extent of any downward departure may evaluate the following factors:

- A. the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

- B. the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

- C. the nature and extent of the defendant's assistance;

- D. any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
- E. the timeliness of the defendant's assistance.

Id. Applying each of the above-listed factors to the defendant's cooperation supports the conclusion that his cooperation substantially assisted the Government, and warrants a downward departure.

Shipman was one of a total of 27 defendants indicted during the course of this investigation and prosecution. He was the first to plead guilty and cooperate and was one of only 5 defendants who pleaded guilty before June of 2001 when the grand jury returned its Third Superseding Indictment. He was debriefed on a number of occasions and provided detailed information about his involvement with the Estrada organization, and was disclosed as a potential witness in the summer of 2001.

His anticipated cooperation resulted in the guilty pleas of co-defendants Pablito Cotto and Rosario Cotto. This is a good indicator of the truthfulness of the information which he provided.

Shipman was prepared to testify at the September, 2001 trial of a number of co-defendants. Although a jury was picked for that trial, the jury was released after the September 11, 2001 attacks on the United States. The district court severed a number of defendants for trial, and because Shipman had no contact with the defendants who were tried in November of 2001, he was not called as a witness in that trial.

He was disclosed as a potential witness at the January, 2002 trial of Isaias Soler and Frank Estrada. Estrada pleaded guilty on the brink of trial to thirteen counts and agreed to the entry of a multi-million dollar order of forfeiture. Frank Estrada later entered into a cooperation agreement with the United States and has become an important cooperating witness himself. After two and one-half days of testimony, co-defendant Isaias Soler also entered guilty pleas to all of the counts in the indictment with which he was charged. As set forth above, Shipman had

7

worked for Soler and was prepared to testify against him. Because of Soler's guilty plea, however, Shipman did not have an opportunity to testify. The threat of Shipman's anticipated testimony was a factor in Soler's decision to plead guilty. Soler is now serving a number of lifetime terms of imprisonment.

Shipman finally had his opportunity to testify at the March, 2002 trial of co-defendants Felix DeJesus, Charles DeJesus, Edward Estrada, Ricardo Rosario, Kelvin Vereen and Enrique Martinez. His testimony implicated the DeJesus brothers, and Ricardo Rosario each of whom was convicted. In addition, his testimony corroborated the testimony of other cooperating witnesses such as Viviana and Glenda Jimenez. This is a further indication that his testimony was credible.

Yamarr Shipman was disclosed as a potential government witness at the five defendant, March 2003 trial of five members of the Jones drug trafficking organization, although he was not called to testify.

The defendant was the first to plead guilty and agree to testify. As the first cooperator, he probably faced the greatest risk until other members of the Estrada organization began pleading guilty. It is not likely that members of the Estrada organization pose a risk to the defendant at this time. He was disclosed as a potential witness against members of the Jones drug trafficking organization. This group poses a greater risk to cooperators. On the other hand, he was never called as a witness against members of the Jones organization. It is the government's understanding that all cooperating witnesses in prison face the risk and threat of retaliation by fellow prisoners.

8

By agreeing to cooperate pro-actively against the members of the Estrada and Jones organizations, the defendant has placed himself at risk. Further, by testifying in open court, he has opened himself and his family to harassment and ostracism.

## V. CONCLUSION

Based upon the foregoing, I submit that Yamarr Shipman has provided substantial assistance in the investigation and prosecution of others who have committed federal narcotics trafficking offenses, and that the Government should file motions pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553 on his behalf.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


ALEX HERNANDEZ
ASSISTANT UNITED STATES ATTORNEY
915 LAFAYETTE BLVD.
BRIDGEPORT, CT 06604
(203) 696-3000
FEDERAL BAR No. CT08345

## CERTIFICATE OF SERVICE

This is to certify that a copy of the within and foregoing has been mailed, postage prepaid, this January 14, 2005, to:

Francis O'Reilly, Esq.
O'Reilly and Shaw
2 Sherman Court
Fairfield, CT 06430

Raymond Lopez
Senior U.S. Probation Officer
United States Probation Office
915 Lafayette Boulevard

9

    Bridgeport, CT 06604

                                                          _____
                                                           Alex Hernandez